[Cite as *JTC Solutions, L.L.C. v. New Age Consulting Serv., Inc.*, 2025-Ohio-5045.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JTC SOLUTIONS, LLC,  :

    Plaintiff-Appellee,  :

                                No. 114799

    v.  :

NEW AGE CONSULTING SERVICE,  :
INC. D.B.A. INFINIT,

    Defendant-Appellant.  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** November 6, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-103430

---

### *Appearances:*

Thrasher, Dinsmore & Dolan, LPA, Samuel T. O'Leary, and Leo M. Spellacy Jr., *for appellee*.

Gertsburg Licata Co. LPA, Victor A. Mezacapa, III, and Maximilian A. Julian, *for appellant*.

WILLIAM A. KLATT, J.:

{¶ 1} Defendant-appellant New Age Consulting Service, Inc. d.b.a. InfinIT ("InfinIT") appeals from the trial court's order that denied InfinIT's motion to stay

proceedings and compel arbitration. For the following reasons, we reverse the trial court's order and remand for proceedings consistent with this opinion.

**Factual and Procedural History**

{¶ 2} The underlying lawsuit arises from a Joint Venture Agreement ("JVA") entered between InfinIT and plaintiff-appellee JTC Solutions, LLC ("JTC"). InfinIT is a full-service IT solutions and services provider to business clients in multiple industries. JTC is a sales enterprise created by InfinIT to serve as a collaborative sales solutions partner that would aid InfinIT with its growing business, increase the customer base, and maintain long-term customer relationships. The JVA executed by InfinIT and JTC on August 1, 2020, required JTC to secure new accounts that would purchase InfinIT's services and provided a framework for the parties to share revenue.

{¶ 3} On May 6, 2024, InfinIT notified JTC that it was in material breach of sections 1.2 and 1.3 and schedule 3.10 of the JVA, and InfinIT subsequently terminated the JVA on the basis of JTC's purported breaches. While InfinIT asserts that JTC's material breaches caused the termination of the JVA, JTC contends that InfinIT unilaterally terminated the agreement. JTC further contends that a finding of which party terminated the agreement impacts what damages, if any, JTC is entitled to recover under the JVA and determines whether the restrictive covenants detailed in section 6 of the agreement ceased at termination. Section 6 references the restrictive covenants of noncompetition, nondisclosure of trade secrets and

confidential information, nonsolicitation, noninterference, nonsolicitation of employees, and exclusivity.

{¶ 4} The parties unsuccessfully attempted to mediate their disputes and, on September 6, 2024, JTC filed a complaint against InfinIT that alleged breach of contract, violation of R.C. 1335.11, and quantum meruit and requested declaratory judgment. Specifically, JTC alleged that InfinIT unilaterally terminated the JVA and failed to make payments to JTC as required by the JVA. JTC sought, through the declaratory-judgment claim, a declaration by the court that because InfinIT materially breached the JVA, the restrictive covenants listed within section 6 of the agreement ceased and no longer applied to JTC.

{¶ 5} On October 10, 2024, prior to filing an answer, InfinIT filed a motion to stay proceedings and compel arbitration pursuant to the JVA. The terms of the JVA require the parties to remedy disputes through mediation and then, if unresolved, by binding arbitration. As to arbitration, the JVA states:

> Binding Arbitration. Except for those claims arising under Section 6 of this Agreement, the Parties shall arbitrate all disputes, controversies, or claims arising from this Agreement. No person or legal authority shall construe this provision to prevent the Parties from seeking any type of injunctive relief, including specific performance and temporary injunction, against either Party or any other person, from any judicial authority prior to the commencement of arbitration hereunder.

JVA, Section 5.3.

{¶ 6} InfinIT argued in its motion to compel that the JVA's arbitration clause is enforceable and applicable to the issues giving rise to the underlying lawsuit. InfinIT also argued the arbitration clause did not violate public policy nor

was it unconscionable. In contrast, JTC did not address enforceability or unconscionability of the arbitration provision but argued that (1) the arbitration clause was void pursuant to R.C. 1335.11(F)(3) because the JVA limits JTC's right to initiate litigation; (2) the portions of the complaint that relate to restrictive covenants are excluded from the binding arbitration clause pursuant to section 6 of the JVA; and (3) the trial court must determine the allegations raised in its declaratory judgment.

{¶ 7} On January 15, 2025, the trial court conducted a hearing on InfinIT's motion and heard from both parties' counsel. InfinIT argued R.C. 1335.11 did not prohibit it from pursuing arbitration and the court should enforce the clear and unambiguous arbitration provisions. InfinIT also argued the declaratory-judgment claim — that requests the trial court address the merits of the case by determining which party breached the agreement and under which contract provision was the document breached — is also subject to arbitration.

{¶ 8} JTC did not "disagree that there's nothing unconscionable about the contract," but argued the binding arbitration provision was precluded under R.C. 1335.11(F)(3) because the provision limited JTC's ability to pursue litigation. Tr. 14. JTC also argued the declaratory-judgment claim was not subject to arbitration because the claim stemmed from section 6 of the JVA and the arbitration clause states it does not apply to section 6 claims.

{¶ 9} On January 16, 2025, the trial court issued this judgment entry denying InfinIT's motion to stay proceedings and compel arbitration:

After a thorough review of the [d]efendant's [m]otion for an [o]rder [s]taying [a]ll [p]roceedings and [c]ompelling [a]rbitration, [p]laintiffs [r]esponse to [d]efendant's [m]otion for an [o]rder [s]taying all [p]roceedings and [c]ompelling [a]rbitration and [m]emorandum in [s]upport, the [r]eply [m]emorandum in [s]upport of [d]efendant's [m]otion for an [o]rder [s]taying [a]ll [p]roceedings and [c]ompelling [a]rbitration, and an oral hearing on this matter, the [c]ourt denies [d]efendant's [m]otion for an [o]rder [s]taying all [p]roceedings and [c]ompelling [a]rbitration.

Under R.C. § 1335.11, "any provision in any contract between the sales representative and principal is void if it purports to do any of the following:

> (1) Waive any of the provision of this section;

> (2) Make the contract subject to the laws of another state;

> (3) Limit the right of the sale representative to initiate litigation or alternative dispute resolution in this state."

R.C. § 1335.11(F).

In this case, the [a]rbitration [p]rovision contained in the JVA subverts [p]laintiff's ability to initiate litigation as it requires that the parties shall arbitrate all claims arising from the JVA. The plain meaning of R.C. Section 1335.11 suggests that [p]laintiff shall have the right to litigation without encumbrance from the JVA provisions, including the [a]rbitration [p]rovision.

{¶ 10} On February 4, 2025, InfinIT filed an interlocutory appeal and presents three assignments of error:

> Assignment of Error I: The trial court erred as a matter of law in ruling that the arbitration clause in the parties' Joint Venture Agreement (the "JVA") was void under Ohio's sales commission statute of frauds (R.C. 1335.11).

> Assignment of Error II: The trial court erred as a matter of law in applying R.C. 1335.11 without having determined if the parties' relationship met the statute's definitions.

Assignment of Error III: The trial court committed reversible error when it failed to enforce the parties' lawful, binding arbitration agreement and denied InfinIT's motion to stay proceedings and compel arbitration.

## Legal Analysis

### A. Standard of Review

{¶ 11} "The appropriate standard of review on judgments pertaining to the enforceability of an arbitration agreement depends on the questions raised in challenging the applicability of the arbitration provision." *Paulozzi v. Parkview Custom Homes, L.L.C.*, 2018-Ohio-4425, ¶ 12 (8th Dist.), quoting *Javorsky v. Javorsky*, 2017-Ohio-285, ¶ 7 (8th Dist.), citing *McCaskey v. Sanford-Brown College*, 2012-Ohio-1543 (8th Dist.). "Questions of contract interpretation (i.e., whether a party has agreed to be subject to an arbitration provision or questions of unconscionability), . . . are reviewed under a de novo standard of review." *Paulozzi* at ¶ 12, citing *Brownlee v. Cleveland Clinic Found.*, 2012-Ohio-2212, ¶ 8 (8th Dist.). Cases that address issues of law are also subject to a de novo review on appeal. *Hudson v. John Hancock Fin. Servs.*, 2007-Ohio-6997, ¶ 8 (10th Dist.), citing *Peters v. Columbus Steel Castings Co.*, 2006-Ohio-382, ¶ 10 (10th Dist.).

{¶ 12} The first and second assignments of error require analysis of a statute — R.C. 1335.11 — and a trial court's interpretation of a statute is a question of law subject to a de novo review. *State v. Futrall*, 2009-Ohio-5590, ¶ 6. The third assignment of error that addresses contract interpretation is also reviewed under a de novo standard. A de novo review is an independent review, without any

deference to the trial court's determination. *State v. Buehner*, 2021-Ohio-4435, ¶ 43 (8th Dist.).

**B. Application of R.C. 1335.11**

{¶ 13} The trial court found the JVA's arbitration clause was in derogation of R.C. 1335.11(F)(3) because it "subvert[ed] [JTC's] ability to initiate litigation" and, therefore, was void pursuant to the statute. Jan. 16, 2025 journal entry. In the first assignment of error, InfinIT contends that the JVA's binding arbitration clause was not void under R.C. 1335.11(F)(3). InfinIT further contends that the trial court erroneously interpreted the statute and denied InfinIT's motion to stay proceedings and compel arbitration. JTC argues that the JVA, which requires the parties to arbitrate their claims, limits JTC's ability to initiate litigation and, thus, the JVA and its binding arbitration provision are void under R.C. 1335.11(F)(3).

{¶ 14} The Ohio Supreme Court has stated that

> "[w]hen construing a statute, a court's objective is to determine and give effect to the legislative intent. *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 72 Ohio St. 3d 62, 65, 1995-Ohio-172, 647 N.E.2d 486 (1995). To determine legislative intent, a court must first consider the words used in a statute. *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, ¶ 10. When a statute's language is clear and unambiguous, a court must apply it as written. *Zumwalde v. Madeira & Indian Hill Joint Fire Dist.*, 128 Ohio St.3d 492, 2011-Ohio-1603, 946 N.E.2d 748, ¶ 23. Further construction is required only when a statute is unclear and ambiguous. *State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 16."

*State v. W.A.R.*, 2024-Ohio-256, ¶ 21 (8th Dist.), quoting *State v. Pariag*, 2013-Ohio-4010, ¶ 10.

{¶ 15} Relevant to this appeal, R.C. 1335.11(F)(3) specifically voids a provision "in any contract between a sales representative and principal . . . if [the provision] purports to [l]imit the right of the sales representative to initiate litigation or alternative dispute resolution in this state." R.C. 1335.11(F)(3), *see also EnQuip Techs. Group Inc.*, 2012-Ohio-6181, ¶ 45 (2d Dist.). The language of R.C. 1335.11(F)(3) is clear and unambiguous; the statute states choice-of-law provisions and forum-selection clauses that limit a sales representative's ability to initiate either litigation or alternative dispute resolution — including arbitration — in the State of Ohio are void.

{¶ 16} The statute's plain meaning is not to prohibit contract provisions that limit a sales representative's right to initiate *any* litigation or *any* alternative dispute resolution, but only those provisions that limit a sales representative from initiating litigation in the State of Ohio or alternative dispute resolution in the State of Ohio. Accordingly, litigation and alternate dispute resolution provisions that permit in-state litigation and in-state arbitration are permissible under the terms of R.C. 1335.11(F)(3). Such an interpretation considers all the words contained in R.C. 1335.11(F)(3). To determine otherwise ignores the basic rule of statutory construction that no words in a statute should be ignored. *E. Ohio Gas Co. v. Pub. Util. Comm. of Ohio*, 39 Ohio St.3d 295, 299 (1988), citing 50 Ohio Jur.2d 207, Statutes, § 227 (1961). The JVA's arbitration provision does not limit JTC's ability to initiate litigation or arbitration in the State of Ohio and, thus, does not implicate R.C. 1335.11(F)(3).

{¶ 17} JTC interprets the statute to void any binding arbitration provision because the sales representative must then proceed with arbitration rather than litigation. JTC also stated in oral arguments that the statutory wording "in this state" applies only to alternate dispute resolution provisions. JTC's arguments result in an interpretation that all alternate dispute resolution provisions limit a sales representative's ability to pursue litigation and, therefore, are void under R.C. 1335.11(F)(3). We reject these arguments that essentially render the statutory wording "alternative dispute resolution" superfluous. *State ex rel. Myers v. Bd. of Edn.*, 95 Ohio St. 367, 372-373 (1917) (A statute must be construed as a whole, giving "effect to every word and clause in it" and no part being treated as superfluous.).

{¶ 18} The trial court was required to apply the unambiguous terms of R.C. 1335.11. The trial court erred as a matter of law when it improperly found R.C. 1335.11(F)(3) rendered the JVA's arbitration clause void and denied InfinIT's motion to stay the proceedings and compel arbitration on that basis. Thus, we sustain InfinIT's first assignment of error.

## C. Definitions under R.C. 1335.11

{¶ 19} InfinIT's second assignment of error argues that the trial court erred when applying R.C. 1335.11 without making an initial inquiry as to the applicability of the statute. Specifically, InfinIT argues the court should have determined whether the presented facts and parties met the statutory definitions of commission, principal, and sales representative. While best practices would have had the trial court make such determinations, our finding on the first assignment of error renders

this assigned error moot. Accordingly, the second assignment of error is overruled as moot.

## D. Applicability of the Arbitration Provision

{¶ 20} In its third assignment of error, InfinIT contends that absent allegations that the arbitration provisions were invalidated due to fraud, unconscionability, or any other reason and absent evidence to support those allegations, the trial court erred when it denied its motion to compel arbitration. JTC argues the arbitration clause does not apply to disputes relating to the restrictive covenants set forth in section 6 of the JVA and, therefore, at a minimum the declaratory-judgment claim must proceed before the trial court.

{¶ 21} Upon review of the trial court's January 16, 2025 journal entry, we find that the trial court did not address whether sufficient evidence was presented to support InfinIT's motion to compel arbitration; the trial court denied InfinIT's motion on other grounds. This is a matter for the trial court to decide on remand because the trial court must make findings of fact before we can review this issue. *Paulozzi*, 2018-Ohio-4425, at ¶ 30 (8th Dist.), citing *Citraro v. Computertraining.com Inc.*, 2013-Ohio-3249, ¶ 19 (8th Dist.). (Where the trial court has not yet made any fact findings with respect to a relevant issue, the case must be remanded for the trial court to make such findings and render a ruling.). The trial court should have the first opportunity to address the merits of InfinIT's motion to compel arbitration and any counterarguments presented by JTC. *See Battle v. Bill Swad Chevrolet*, 140 Ohio App.3d 185, 192 (10th Dist. 2000) ("The

trial court never reached this issue, as it denied appellant's motion [to compel] on other grounds. The trial court should have the first opportunity to address the existence or non-existence of unconscionability.").

{¶ 22} In light of the above, we sustain InfinIT's third assignment of error. This case must be remanded to the trial court to conduct further inquiry into the issues of whether the arbitration clause is enforceable and whether the arbitration clause applies to all claims raised in JTC's complaint. Although we make no conclusion regarding the validity of InfinIT's claims, we note that the trial court's judgment entry should clearly indicate its findings and the evidence upon which it relies.

{¶ 23} We sustain the first and third assignments of error and overrule the second assignment of error as moot. Judgment reversed and case remanded to the trial court with instructions to conduct further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
WILLIAM A. KLATT, JUDGE*

ANITA LASTER MAYS, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)

SEAN C. GALLAGHER, P.J., CONCURRING IN JUDGMENT ONLY:

{¶ 24} I concur in the judgment reversing the trial court's decision denying New Age Consulting Service, Inc., d.b.a. InfinIT's motion to stay proceedings and compel arbitration. However, I would apply the plain language of R.C. 1335.11(F)(3) as written to reach this result rather than broadly interpreting the statute based on the perceived legislative intent.

{¶ 25} R.C. 1335.11(F)(3) is simple enough. The statute nullifies a provision "in any contract between a sales representative and principal . . . if [the provision] purports to [l]imit the right of the sales representative to initiate litigation or alternative dispute resolution in this state." In analyzing that language, however, the parties offer differing approaches.

{¶ 26} InfinIT seeks a broad declaration that R.C. 1335.11(F)(3) must be interpreted to solely preclude choice-of-law or forum-selection clauses that limit a sale representative's ability to seek relief in Ohio based on the legislature's intent.

InfinIT's argument suffers from the fact that its interpretation requires consideration of words and phrases not contained in the statutory text, and more important, it has long been held that courts generally do not resort to reviewing legislative intent unless the statute is ambiguous. *See State v. Staffrey*, 2025-Ohio-2889, ¶ 27, citing *Trumbull Cty. v. Purdue Pharma, L.P. (In re Natl. Prescription Opiate Litigation)*, 2024-Ohio-5744, ¶ 32 (courts need not review legislative intent when the words of the statute are clear and unambiguous).

{¶ 27} JTC Solutions, LLC, on the other hand, claims that the disjunctive phrasing of R.C. 1335.11(F)(3) provides an either-or proposition: that the contract cannot limit the right to either initiate litigation or initiate alternative dispute resolutions in Ohio. According to JTC, any contractual provision that precludes litigation in Ohio is proscribed even if arbitration is permitted. JTC then cites the contractual arbitration requirement to demonstrate that it was contractually precluded from "initiating litigation" in Ohio.

{¶ 28} InfinIT is looking at the forest, interpretation of a statute based on the overall intent of the statute, while JTC is focused on a single tree within the forest, the particular word in subdivision (F)(3). Because JTC is focused on the wrong tree, however, I agree with the majority's conclusion. No provision of the Joint Venture Agreement has been identified that violates the plain and unambiguous language of R.C. 1335.11(F)(3). In this case, we need not interpret the statutory language to determine the overarching intent. When a statute's language is clear and unambiguous, a court must apply those words as written.

*Zumwalde v. Madeira & Indian Hill Joint Fire Dist.*, 2011-Ohio-1603, ¶ 23. The focus should be on the language of the statute as JTC contends, but in this case, the operative word is "initiate."

{¶ 29} "Initiate" is the verb acting on both nouns in the disjunctive clause, "litigation" or "alternative dispute resolution." It is undefined by statute. When a word is undefined, courts turn to the plain and ordinary meaning. *Great Lakes Bar Control, Inc. v. Testa*, 2018-Ohio-5207, ¶ 8. "Initiate" is generally defined as to "[c]ommence; start; originate; introduce," and necessarily "means to commence an action, not continue a proceeding that has already begun." *State ex rel. Ohio Dept. of Health v. Sowald*, 65 Ohio St.3d 338, 342 (1992), quoting *Black's Law Dictionary* (6th Ed. 1990). Thus, R.C. 1335.11(F)(3) provides authority to nullify a contractual provision that prevents a sales representative from "initiating" a lawsuit in Ohio.

{¶ 30} As this case aptly illustrates, however, JTC initiated litigation in Ohio despite the arbitration clause. InfinIT's motion seeks an order staying the proceeding and compelling arbitration. That remedy does not result in a dismissal of the case or otherwise preclude JTC from initiating the litigation. Instead, the action JTC initiated is stayed pending the contractual arbitration. A party's agreement to an arbitration provision only "waives the right to trial," *Olah v. Ganley Chevrolet*, 2006-Ohio-694, ¶ 13 (8th Dist.); it does not waive the right to initiate a lawsuit. Following arbitration, any party may appeal that decision by motion to the trial court. *See* R.C. 2711.13. Thus, arbitration, even if enforced,

begins and ends with the litigation initiated by the sales representative. For this reason, R.C. 1335.11(F)(3) is not applicable to the arbitration provision at issue. That provision does not preclude JTC from initiating litigation in Ohio, and the trial court erred in concluding otherwise.

{¶ 31} Notwithstanding my differing analysis, I agree with the majority's mandate, remanding the matter to the trial court to consider the remaining arguments regarding the motion to stay proceedings and compel arbitration left unaddressed by the trial court's initial decision.